BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*Counsel for Debtor*

Electronically Filed December 7, 2021

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.  BK-21-14823-nmc |
| FORTEM RESOURCES, INC., | Chapter 11 (Subchapter V) |
| Debtor. | **MOTION FOR ORDER:**<br>**(A) AUTHORIZING DEBTOR TO**<br>**OBTAIN POSTPETITION FINANCING;**<br>**(B) GRANTING LIENS; AND**<br>**(C) GRANTING RELATED RELIEF**<br><br>Hearing Date:  January 4, 2022<br>Hearing Time:  9:30 a.m. |

Fortem Resources, Inc. ("Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), respectfully submits this motion (the "Motion") for entry of a final order (the "Final Order") pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001(b) and (c) of the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court, District of Nevada ("Local Rules"): (a) authorizing and approving, among other things, Debtor to: (i) obtain postpetition financing in the amount of $300,000.00 (the "Postpetition Financing") from Pimee Energy, Inc. (the "Lender"), and (ii) grant Lender first priority liens on all of its Property; and (b) granting related relief.

Debtor seeks authorization for the Postpetition Financing in order to fund the expenses of the Chapter 11 Case and confirm a plan of reorganization.  A copy of the *Debtor-In-Possession Credit*

1

*Agreement* (the "DIP Agreement"[1]) is attached as **Exhibit "1"** to the *Declaration of Marc A. Bruner* (the "Bruner Declaration"), filed in support hereof. Debtor is seeking to use the Postpetition Financing pursuant to a cash budget, a copy of which (pertaining to the first 13-week period following the Petition Date) is attached to the DIP Agreement as Exhibit "B" thereto (the "Initial Cash Budget").

In compliance with Bankruptcy Rule 4001(c)(1)(B), Debtor provides the following additional information regarding the proposed Postpetition Financing. Nothing in the following summary alters or amends the terms of the DIP Agreement or the proposed Final Order, and to the extent of any conflict between the following summary and the DIP Agreement, the proposed Final Order, the DIP Agreement, or the Final Order, as applicable, shall control:

| CITATION TO DIP AGREEMENT/ FINAL ORDER[2] | MATERIAL PROVISIONS OF POSTPETITION FINANCING |
|---|---|
| DIP Agreement, § 2.3(a) & (c) | **Interest Rate**: 5.25%; default rate of 15%. |
| DIP Agreement, §§ 1.1, 2.3(d) | **Maturity**: Either: (a) the earlier of (i) February 15, 2022, or (ii) the Effective Date of confirmed Reorganization Plan; or (b) such other date agreed in writing by Lender and Debtor. |
| DIP Agreement, § 8.1 | **Events of Default**: include the following: (a) failure to pay principal or interest on the Note when due; (b) Loan proceeds used for non-approved purposes; (c) dismissal or conversion of Chapter 11 Case; (d) appointment of a trustee (other than the subchapter V trustee); (e) the entry of an order granting a lien equal or superior to the Lender's lien, or granting relief from stay for creditors to enforce a lien, on the Collateral; and (f) confirmation of plan of reorganization that is not a Lender Approved Reorganization Plan. |
| DIP Agreement, § 2.3(f) Final Order, ¶ 7 | **DIP Financing Liens**: Debtor grants Lender first priority Liens on all Property, subject and subordinate only to the Carve-Out. |

---

[1] Capitalized terms used, but not defined, herein shall have the meaning ascribed to such terms in the DIP Agreement.
[2] The proposed Final Order is attached hereto as **Exhibit "1."**

127470112.3

| CITATION TO DIP AGREEMENT/ FINAL ORDER[2] | MATERIAL PROVISIONS OF POSTPETITION FINANCING |
|---|---|
| N/A | **DIP Superpriority Claim**: |
| DIP Agreement, § 1.1 | **Commitment Amount**: $300,000.00 |
| DIP Agreement, § 4.1 | **Borrowing Conditions**: include the following: (a) entry of the Final DIP Order; (b) no Material Adverse Effect has occurred; (c) no litigation that, if successful, would have a Material Adverse Effect; and (d) Lender has approved Initial Cash Budget and use of proceeds. |
| DIP Agreement, § 1.1  Final Order, ¶ 9 | **Carve-Out**: in the aggregate of (i) the Subchapter V Trustee Fees; and (ii) an amount not exceeding $150,000 in the aggregate. |
| *Types of Provisions Identified in Bankruptcy Rules 4001(c)(1)(B)(i) through (xi)* | |
| DIP Agreement, § 2.3(f)  Final Order, ¶ 7 | **(i) Grant of priority/lien under 11 U.S.C. § 364(c) or (d)**: Debtor grants Lender first priority Liens on all Property, subject and subordinate only to the Carve-Out. |
| N/A | **(ii) Adequate protection for pre-petition claims**: |
| N/A | **(iii) Determination re: pre-petition lien/claim**: |
| DIP Agreement, § 8.2  Final Order, ¶ 11 | **(iv) Waiver/modification of the automatic stay**: Automatic stay terminated upon Event of Default to allow Lender to enforce all rights and remedies. |
| DIP Agreement, §§ 5.1(b), 8.1(d)(vii) | **(v) Waiver/modification of rights re: chapter 11 plan, cash collateral or post-petition financing**: Debtor cannot file plan that is not a Lender Approved Reorganization Plan, and cannot incur indebtedness outside the ordinary course. |
| N/A | **(vi) Confirmation/disclosure statement deadlines**: |
| N/A | **(vii) Waiver/modification of lien rights under non-bankruptcy law**: |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127470112.3

| CITATION TO DIP AGREEMENT/ FINAL ORDER[2] | MATERIAL PROVISIONS OF POSTPETITION FINANCING |
|---|---|
| N/A | **(viii) Release of estate cause of action**: |
| N/A | **(ix) Indemnification**: |
| N/A | **(x) 506(c) waiver**: |
| DIP Agreement, § 2.3(f) Final Order, ¶ 7 | **(xi) Lien/claim on avoidance actions:** Debtor grants Lender first priority Liens on all Property (including Avoidance Actions), subject and subordinate only to the Carve-Out. |

This Motion is made and based upon the following memorandum of points and authorities, the Bruner Declaration, the papers and pleadings on file with the Court in the Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Motion.

DATED this 7th day of December 2021.

**FOX ROTHSCHILD LLP**

By: _____/s/Brett Axelrod_____
     BRETT A. AXELROD, ESQ.
     Nevada Bar No. 5859
     1980 Festival Plaza Drive, Suite 700
     Las Vegas, Nevada 89135
     *Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127470112.3

**MEMORANDUM OF LAW**

**POINTS AND AUTHORITIES**

**I.**

**JURISDICTION**

1.    This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.    Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory bases for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363(c), 363(e), 364(c), and 364(e), Bankruptcy Rule 4001(c) and Local Rules 4001(b) and (c).

**II.**

**FACTUAL BACKGROUND**

**A.    General Background.**

4.    On October 5, 2021 (the "Petition Date"), Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

5.    Debtor is continuing in possession of its properties and operating and managing its business, as debtor in possession, pursuant to Bankruptcy Code sections 1107 and 1108. See generally Chapter 11 Case Dockets.

6.    Edward M. Burr has been appointed as the subchapter V trustee (the "Subchapter V Trustee").

7.    Debtor anticipates filing a proposed plan of reorganization ("Plan") within 14 days of approval of the Postpetition Financing.  See Bruner Declaration, ¶ 5.

8.    The factual background relating to Debtor's commencement of the Chapter 11 Case is set forth in detail in the *Omnibus Declaration of Marc A. Bruner in Support of Chapter 11 Petition and Fox Rothschild Employment Application* [ECF No. 33] (the "Omnibus Declaration") and is incorporated for all purposes herein by this reference.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127470112.3

**B.      Debtor's Need for the Postpetition Financing.**

9.      As explained in greater detail in the Omnibus Declaration, the Alberta Securities Commission has issued a Cease Trade Order (the "CTO") with respect to Fortem's securities.  Since the CTO was issued in July 2019, Fortem has been prohibited under the securities legislation of Alberta from raising capital, therefore impairing the funding of Fortem's day to day operations, and precluding Fortem from realizing the value of its assets.  See Omnibus Declaration, ¶¶ 17-24.

10.      Accordingly, an immediate need exists for Debtor to obtain funds in order to administer and preserve the value of its Chapter 11 Estate through confirmation of its Plan.  See Bruner Declaration, ¶ 6.

11.      As set forth in the Initial Cash Budget, Debtor will need to borrow $300,000.00 through the week ending February 28, 2022 in order to fund the expenses for the administration of the Chapter 11 Case and distributions to creditors under its Plan.  See Bruner Declaration, ¶ 7.

### III.

### RELIEF REQUESTED

12.      By this Motion, Debtor seeks authorization to obtain the Postpetition Financing from Lender pursuant to the DIP Agreement.  In the interests of full disclosure, the majority shareholders of the Lender, Michael Caetano and Michael Kamis, are minority shareholders of the Debtor (owning, respectively, less than 2% and less than 1% of Debtor's securities).  See Bruner Declaration, ¶ 8.

13.      Debtor is seeking to use Postpetition Financing pursuant to the Initial Cash Budget, a copy of which (pertaining to the first 13-week period) is attached to the DIP Agreement as Exhibit "B" thereto.

14.      As indicated by the Initial Cash Budget, Debtor projects that it will need to borrow $300,000.00 in Postpetition Financing in order to confirm its Plan by the end of February 2022.  Accordingly, timely approval of the proposed Postpetition Financing is critical to the Debtor's timely emergence from Chapter 11.  See Bruner Declaration, ¶ 9.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127470112.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**IV.**

**LEGAL ARGUMENT**

A.    **The Debtor Has Satisfied the Legal Requirements for Approval of the Loan Under Sections 364(c) of the Bankruptcy Code.**

15.    The Debtor proposes to obtain financing by providing the Lender with first priority Liens on all of Debtor's Property, pursuant to section 364(c)(2) of the Bankruptcy Code.  All of Debtor's Property is currently unencumbered.  See Bruner Declaration, ¶ 10.

16.    The statutory requirement for obtaining postpetition credit secured by liens on unencumbered property is a finding, made after notice and a hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense."  11 U.S.C. § 364(c)(2).[1]

17.    Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether:

a    the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;

b    the credit transaction is necessary to preserve the assets of the estate; and

c    the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

In re Ames Dept. Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); see also In re St. Mary Hospital, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

---

[1] Section 364(c) of the Bankruptcy Code provides that:

(c)    If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under § 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1)    with priority over any and all administrative expenses of the kind specified in § 503(b) or 507(b) of this title;

(2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)    secured by a junior lien of property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

3

18.     Consistent with this authority, and for the reasons discussed below, Debtor respectfully submits that the Court should approve Debtor's decision to enter into the DIP Agreement.

**1.     No Comparable Alternative To The Financing Provided Under the DIP Agreement Is Currently Available.**

19.     As noted in the Bruner Declaration, during the period following the Petition Date, Debtor attempted to identify other sources of post-petition financing to determine whether Debtor could obtain debtor in possession financing on better terms.  However, given the issuance of the CTO and Debtor's current financial condition, Debtor has been unable to obtain financing on more favorable terms than those provided in the DIP Agreement.  See Bruner Declaration, ¶ 11.

20.     In fact, Debtor has had contact with at least three other prospective lenders to try to obtain funding.  In the end, the only (and best) offer received was the current proposed arrangement with Lender.  See Bruner Declaration, ¶ 12.

21.     Notably, section 364 "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."  Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986) (affirming DIP loan priming lien where trustee had unsuccessfully sought financing from "other financial institutions in the immediate geographic area"); In re Reading Tube Indus., 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders."); In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (authorizing DIP loan priming lien where debtor contacted three other lenders; observing that "it would be unrealistic and unnecessary to require Debtor to conduct such an exhaustive search for financing"), aff'd, 99 B.R. 117 (N.D. Ga. 1989); In re Ames Dep't Stores, 115 B.R. at 40 (authorizing DIP loan superpriority claim where debtor contacted four other lenders).

22.     The Debtor respectfully submits that, given the unsuccessful efforts made to seek attractive alternatives, it has demonstrated that post-petition financing is not available on a more favorable basis.

23.     In summary, the Debtor has made a concerted, good-faith effort to obtain credit on the most favorable terms that are available. As explained above, the required financing was not available

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

4

on an unsecured basis, and the terms of the Postpetition Financing were, on the whole, the most favorable terms available to the Debtor. The proposed terms of the Postpetition Financing are fair, reasonable and adequate given the current credit market and the Debtor's circumstances, and the fact that such terms neither: (a) adversely impact the conduct of this Chapter 11 Case or prejudice the powers and rights that the Bankruptcy Code confers on Debtor for the benefit of all creditors; nor (b) prevent motions by parties-in-interest from being decided on their merits.

24. Likewise, the terms and conditions of the Postpetition Financing, including the lack of any commitment fee, have been the subject of extensive negotiations conducted in good faith and at arm's length, and are fair and reasonable under the circumstances. See Bruner Declaration, ¶ 13. Accordingly, the Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of such agreement.

**2.  Approval of the Postpetition Financing Is In the Best Interests of the Debtor's Estate.**

25. Moreover, without the Postpetition Financing, Debtor would be unable to fund the cost of administering its Chapter 11 Case or make any distribution to its existing creditors, likely eliminating its ability to reorganize altogether. See Bruner Declaration, ¶ 14.

26. Debtor expects to file its Plan shortly. Among other things, the Plan will provide for payment of all expenses involved in administering the Chapter 11 Case, including the Subchapter V Trustee Fees, and an anticipated distribution of approximately $40,000.00 to unsecured creditors. Absent the Postpetition Financing, Debtor will not be able to confirm the Plan. See Bruner Declaration, ¶ 15.

27. The Court should approve the Postpetition Financing because: (i) the Debtor is unable to obtain financing on an unsecured basis; (ii) the proposed financing is on market terms; and (iii) approval of the Postpetition Financing is in the best interests of the Debtor's estate.

**3.  Debtor's Decision to Enter into the DIP Agreement Is Supported by Sound Business Judgment.**

28. Courts generally give broad deference to the business decisions of a debtor. See, e.g., Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Continental Air Lines,

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Inc., 780 F.2d 1223, 1226 (5th Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1987).  In particular, a bankruptcy court should defer to a debtor's reasonable business judgment regarding the need for funds, so long as the proposed financing agreement does not contain terms that either leverage the bankruptcy process or that benefit a third party rather than the bankruptcy estate.  See, e.g., In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment . . . , [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors").  As explained by the bankruptcy court in In re Ames Department Stores, Inc., 115 B.R. 34 (Bankr. S.D.N.Y. 1990):

> [A] court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.

Id. at 40.

29.    Here, Debtor's decision to enter into the Postpetition Financing represents a reasonable exercise of business judgment.  As demonstrated by the Initial Cash Budget, Debtor has an immediate need for the Postpetition Financing in order to fund the expenses of the Chapter 11 Case and confirm its Plan.  Debtor and Lender negotiated the terms of the proposed Postpetition Financing at arms' length in good faith, and Lender was represented by independent counsel.  See Bruner Declaration, ¶ 16.  Lender is willing to provide the Postpetition Financing on acceptable terms.  Debtor anticipates that its Plan, which Debtor expects to file in the coming days, will provide for the transfer of Debtor's Property to Lender in satisfaction of Lender's Postpetition Financing, payment in full of administrative expenses, and a distribution to unsecured creditors. Such a Plan will benefit creditors and further establishes the sound business judgment of Debtor in entering into the proposed Postpetition Financing.

30.    Without the Postpetition Financing, Debtor would not be able to fund the costs of administering its Chapter 11 Case and proceed with any plan of reorganization.  Instead, Debtor would be faced with the potential for administrative insolvency followed by a liquidation.  See Bruner

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127470112.3

Declaration, ¶ 17.  Given the choice between these two alternatives, Debtor prudently negotiated the DIP Agreement with Lender to ensure that Debtor would have the necessary funding to bring the Chapter 11 Case to a successful conclusion.  Therefore, the Court should approve Debtor's decision to enter into the DIP Agreement as an exercise of sound business judgment.

### 4.      The Terms of the Postpetition Financing are Reasonable Under The Circumstances and Should be Approved.

31.      The terms of the DIP Agreement are similar to those often included in complex financing arrangements.  Indeed, the DIP Agreement and the proposed Final Order reflect the give and take that result from complex financing negotiations.  See Bruner Declaration, ¶ 18.  Courts have recognized that a debtor often must make significant concessions in exchange for financing.  See, e.g., In re Ellingsen MacLean Oil Co., 65 B.R. 358, 365 (Bankr. W.D. Mich. 1986), aff'd, 834 F.2d 599 (6th Cir. 1987) (chapter 11 postpetition financing is "fraught with dangers for creditors").  Accordingly, courts recognize that a debtor may need to "enter into a hard bargain with a creditor in order to acquire the needed funds to complete reorganization." Id. at 365.

32.      As noted above, the terms of the DIP Agreement are favorable under the circumstances.  This is not a case where an over-reaching (and/or oversecured) pre-petition lender seeks to enhance its collateral package at the expense of unsecured creditors.  Instead, Lender simply requested reasonable protections to secure repayment of the Postpetition Financing.

33.      Similarly, the interest rate of five and a quarter percent (5.25%) is reflective of the competitive rates available in the market for financing secured by a lien on assets that may not be readily convertible to cash.  See Bruner Declaration, ¶ 19.

34.      Furthermore, the DIP Agreement provides for a reasonable Carve-Out, which covers fees and expenses of professionals employed by Debtor.  Lenders often agree to subordinate or "carve-out" from their collateral funds to pay professionals.  See Harvis Trien & Beck, P.C. v. Federal Home Mortgage Corp. (In re Blackwood Assocs., L.P.), 187 B.R. 856, 860 (Bankr. E.D.N.Y. 1995) (court advised that if professionals really want to be paid they had best insist upon a "real carve out"); In re Ames, 115 B.R. at 40 (noting practice of district to insist on carve-out for fees in order to preserve adversary system).

7

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

35. The Events of Default and conditions to borrowing are customary in postpetition financings, as is Lender's ability to exercise remedies upon the occurrence of an Event of Default. Lender does not unduly seek to control or restrict Debtor's ability to prosecute the Chapter 11 Case.

36. Given Debtor's circumstances, Debtor believes the terms of the Postpetition Financing are fair, reasonable and adequate, under the circumstances. See Bruner Declaration, ¶ 20. The Court should approve the Postpetition Financing based on its fair and reasonable terms.

## V.

## NOTICE

37. Notice of this Motion is being given by either electronic mail, U.S. Mail or the Court's ECF noticing to the following parties or their counsel: (a) the Office of the United States Trustee for the District of Nevada; (b) the Subchapter V Trustee; (c) counsel to Lender; (d) the federal and state governmental units required by Local Bankruptcy Rule 2002(b); (e) Debtor's known twenty largest unsecured creditors; and (f) all other parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, Debtor respectfully submits that no further notice is necessary.

## VI.

## CONCLUSION

WHEREFORE, based upon all the foregoing, as set forth in this Memorandum, the Motion, the Bruner Declaration and all other papers, documents, or other evidence submitted in support of the Motion, Debtor respectfully requests that the Court grant the Motion in its entirety and enter the Final Order authorizing Debtor to borrow on a final basis under the terms of the Loan Documents (as Loan Documents are defined in the DIP Agreement), and grant to Debtor such other relief as the Court deems necessary and appropriate.

DATED this 7th day of December 2021.

**FOX ROTHSCHILD LLP**

By: _____ */s/Brett Axelrod* _____
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*Counsel for Debtor*

8

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**EXHIBIT "1"**

**PROPOSED FINAL ORDER**

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*[Proposed]Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re | Case No. BK-21-14823-nmc |
|---|---|
| FORTEM RESOURCES, INC., | Chapter 11 (Subchapter V) |
| Debtor | **FINAL ORDER: (A) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING; (B) GRANTING LIENS; AND (C) GRANTING RELATED RELIEF** |
| | Hearing Date:  January 4, 2022
Hearing Time: 9:30 a.m. |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada  89135
(702) 262-6899
(702) 597-5503 (fax)

9

127470112.3

The Court, having reviewed and considered the *Motion* (the "Motion"[1]) filed by Fortem Resources, Inc. ("Debtor") for entry of a final order (the "Final Order") pursuant to section 364 of title 11 of the United States Code, §§ 101 *et. seq.* (the "Bankruptcy Code"), Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001(b) and (c) of the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court, District of Nevada ("Local Rules") authorizing and approving, among other things, Debtor to obtain postpetition financing (the "Postpetition Financing") from Pimee Energy, Inc. (the "Lender") on a secured basis pursuant to a *Debtor-In-Possession Credit Agreement* (the "DIP Agreement"), and the *Declaration of Marc A. Bruner* filed in support of the Motion, and it appearing that the relief requested is in the best interests of Debtor's estate, creditors and all other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered all other pleadings and evidence submitted by the parties in connection with the Motion; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having considered the oral arguments of counsel at the hearings held on January 4, 2022 (the "Hearing"); and the Court having made findings of fact and conclusions of law on the record, which (to the extent not expressly set forth below) are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Bankruptcy Rule 7052; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

---

[1] Capitalized terms used, but not defined in this Order, shall have the meaning ascribed to such terms in the Motion.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

10

**I.    Background, Jurisdiction and Notice.**

A.    On October 5, 2021 (the "Petition Date"), Debtor commenced the above-captioned bankruptcy case (the "Chapter 11 Case") by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.  Debtor is continuing to operate its businesses as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner, or statutory committee has been appointed (other than a subchapter V trustee).

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Debtor has complied with the requirements of Bankruptcy Rules 4001(c) and 4001(d), and Local Rules 4001(b), 4001(c) and 9006 by serving the Motion and providing notice of the Hearing to: (i) the Office of the United States Trustee; (ii) the subchapter V trustee; (iii) counsel to Lender; (iv) the federal and state governmental units required by Local Bankruptcy Rule 2002(b); (v) Debtor's known twenty largest unsecured creditors; and (vi) all other parties requesting notice pursuant to Bankruptcy Rule 2002.  Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects.

**II.    Findings Regarding the Postpetition Financing Based on the Record at the Hearing.**

D.    Debtor's ability to obtain the Postpetition Financing is critical to its ability to fund the costs of administering it the Chapter 11 Case and confirm its Plan.  Debtor's access to sufficient liquidity through the incurrence of the Postpetition Financing under the terms of this Final Order is vital to Debtor's successful reorganization.  Consequently, without the ability to obtain Postpetition Financing to the extent authorized pursuant to this Final Order, Debtor and its estate would suffer immediate and irreparable harm.

E.    Debtor is unable to obtain adequate unsecured credit allowable under Bankruptcy Code sections 364(b) and 503(b)(1).  The Postpetition Financing reflects the most favorable terms available to Debtor.  Debtor requires the Postpetition Financing to satisfy its postpetition liquidity needs.

127470112.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

F.      Lender has indicated a willingness to provide Debtor with the Postpetition Financing, but solely on the terms and conditions set forth in this Final Order and in the Loan Documents (as defined in the DIP Agreement).  After considering all alternatives, Debtor has concluded, in an exercise of its sound business judgment, that the financing to be provided by Lender pursuant to the terms of this Final Order and the Loan Documents represents the best financing presently available to Debtor.

G.      The security interests and liens granted pursuant to this Final Order to Lender are appropriate under Bankruptcy Code section 364(c)(2).

H.      Entry of this Final Order is in the best interest of Debtor, the estate and creditors.  The terms of the Loan Documents are fair and reasonable under the circumstances, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration.

I.      Debtor and Lender have negotiated the terms and conditions of the Loan Documents and this Final Order in good faith and at arm's-length, and any credit extended and loans made to Debtor pursuant to this Final Order shall be, and hereby is, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of Bankruptcy Code section 364(e).

J.      Based on the foregoing, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor;

**III.    Disposition.**

1.      The Motion is granted on the terms and conditions set forth in this Final Order.  This Final Order shall become effective immediately upon its entry.  To the extent the terms of the Loan Documents differ in any material respect from the terms of this Final Order, this Final Order shall control.

**IV.    Authorization of the Postpetition Financing and Entry Into the Loan Documents.**

2.      The terms and conditions of the DIP Agreement are hereby approved.  Debtor is hereby authorized to enter into the Loan Documents, including the DIP Agreement and such additional documents, instruments and agreements as may be reasonably required by Lender to implement the terms or effectuate the purposes of this Final Order.  Immediately upon entry of this Final Order,

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Debtor is hereby authorized to borrow under the Loan Documents a total of three hundred thousand dollars ($300,000.00), in accordance with this Final Order, the DIP Agreement, and the other Loan Documents.

3.    Debtor is hereby authorized to incur the Obligations solely in accordance with the terms and conditions set forth in the DIP Agreement and this Final Order.

**V.    Loan Obligations.**

4.    Upon execution and delivery of the Loan Documents, the Loan Documents shall constitute valid, binding and continuing obligations of Debtor, enforceable against Debtor in accordance with the terms thereof.  No obligation, payment, transfer or grant of security under the Loan Documents or this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

5.    The Loan: (i) shall bear interest payable at the rates set forth in the DIP Agreement; (ii) shall be secured in the manner specified in Paragraph 7 below; (iii) shall be payable in accordance with the terms of the Loan Documents; and (iv) shall otherwise be governed by the terms set forth herein and in the Loan Documents.

**VI.    Use of Loan Proceeds.**

6.    Debtor may use the Loan pursuant to the terms and conditions set forth in this Final Order and in the Loan Documents.

**VII.    Grant of Liens.**

7.    As security for the full and timely payment of the Obligations, Lender is hereby granted, subject to the Carve-Out, pursuant to Bankruptcy Code section 364(c): (i) valid and duly perfected senior Liens on all Property (collectively, the liens to be granted to Lender are referred to herein as the "<u>DIP Lien</u>" and the collateral subject to such DIP Lien is referred to herein as the "<u>DIP Collateral</u>"); provided that the DIP Lien shall in all instances and respects be subject and subordinate to the Carve-Out.  The DIP Lien shall attach to the DIP Collateral and be binding and enforceable with respect thereto upon entry this Final Order without further action on the part of Debtor or Lender with respect to the aggregate amount of the Loan.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

13

8.      The DIP Lien shall not be subject to challenge and shall attach and become valid, binding, continuing, enforceable, fully-perfected and non-avoidable by operation of law as of the Petition Date without any further action by Debtor, Lender, or any other person, and without the necessity of execution by Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, deeds of trust, assignment of rents, filings with the U.S. Patent and Trademark Office, or other documents.  Debtor, upon the request of Lender (i) shall authorize Lender to file and record such financing statements and fixture filings with respect to any DIP Collateral identified by Lender, and (ii) shall take any such other action as reasonably required by Lender with respect to DIP Collateral identified by Lender in order to perfect the DIP Liens granted herein.  Lender is authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order.

## VIII.   Carve-Out.

9.      The DIP Lien shall be subject to carve-out (the "Carve-Out") for: (a) the Subchapter V Trustee Fees; and (b) an amount not exceeding $150,000 in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default, to pay the fees and expenses of professionals retained by Debtor that are allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses Lender's right to seek any disgorgement is hereby waived); *provided, however*, that (i) Debtor shall be permitted to pay compensation and reimbursement of expenses allowed, allowable or otherwise authorized by the Bankruptcy Court and payable under Bankruptcy Code sections 330 and 331 in accordance with the Initial Cash Budget; (ii) the Carve-Out shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed or allowable by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked; and (iii) Lender's right to seek any disgorgement thereof is hereby waived; and provided, further, that nothing herein shall be construed to impair the ability of Lender to object to the reasonableness of any of the fees, expenses, reimbursement or compensation sought by the professionals retained by Debtor.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702)597-5503 (fax)

14

**IX.    11 U.S.C. § 364(e) Protections.**

10.    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any Obligations incurred pursuant to this Final Order or the Loan Documents, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the Loan Documents with respect to any Obligations.    Notwithstanding any such reversal, modification, vacation or stay, any incurrence of Obligations by Debtor pursuant to this Final Order shall be governed in all respects by the provisions of this Final Order and the Loan Documents, and Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Bankruptcy Code section 364(e), this Final Order, and the Loan Documents with respect to incurrence of the Obligations by Debtor.

**X.    Vacation of the Automatic Stay.**

11.    Notwithstanding Bankruptcy Code section 362, the automatic stay is hereby vacated and modified to the extent necessary to permit Lender, upon the occurrence and during the continuance of an Event of Default and following three (3) business days' prior notice thereof to Debtor (with a copy to the United States Trustee for the District of Nevada, and to the subchapter V trustee), and without further order of or application to the Bankruptcy Court to: (i) declare the Obligations immediately due and payable, (ii) declare the Loan or any portion thereof then outstanding to be forthwith due and payable, whereupon the principal of such Loan together with accrued interest thereon and any unpaid accrued fees and all other liabilities of Debtor under any Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by Debtor, anything contained herein or in any other Loan Document to the contrary notwithstanding, and (iii) after three (3) business days' prior notice (the "Stay Notice Period") to Debtor, and absent order of the Bankruptcy Court to the contrary, exercise any and all remedial rights with respect to the DIP Collateral; provided that Lender consents to a hearing before the Bankruptcy Court with respect to the foregoing on such shortened time as may be available according to the Bankruptcy Court's calendar and the stay shall

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada  89135
(702) 262-6899
(702) 597-5503 (fax)

127470112.3

remain in effect pending such a hearing if requested by Debtor prior to the expiration of the Stay Notice Period.

**XI.    Miscellaneous Provisions.**

12.    The provisions of this Final Order shall be binding upon and inure to the benefit of Lender, Debtor, and their respective successors and assigns.  The provisions of this Final Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in the Chapter 11 Case unless otherwise provided therein; (ii) converting the Chapter 11 Case to one under chapter 7 of the Bankruptcy Code; or (iii) dismissing the Chapter 11 Case; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Final Order shall maintain their priority as provided by this Final Order until all of the Obligations are indefeasibly paid in full and discharged in accordance with the terms of this Final Order and the DIP Agreement.

13.    Debtor is hereby authorized, without further order of this Court, to enter into agreements with Lender providing for (a) non-material modifications to the DIP Agreement, or (b) any other modifications to the DIP Agreement necessary to conform the DIP Agreement to this Final Order.

14.    To the extent applicable, this Final Order is not subject to the 14-day stay provision of Bankruptcy Rule 4001(a)(3).

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By: ____*/s/Brett A. Axelrod*_____
     BRETT A. AXELROD, ESQ.
     Nevada Bar No. 5859
     1980 Festival Plaza Drive, Suite 700
     Las Vegas, Nevada 89135
*Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

16

APPROVED/DISAPPROVED:

**SUBCHAPTER V TRUSTEE**

BY_____

## CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐ The Court has waived the requirement of approval in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

17

127470112.3